Next case for argument is Cherif v. Department of Veterans Affairs. Mr. Carroll. Thank you, Your Honor. May it please the Court, Counsel, Christopher Carroll for the appellant's sake of Cherif. We are here appealing an order granting summary judgment against Mr. Cherif and in favor of the Department of Veterans Affairs against all three counts of this complaint filed under the Civil Rights Act of 1964, Title VII. These three counts allege race and national origin discrimination, hostile work environment, and retaliatory discharge. Except you never briefed the hostile work environment or the retaliation claim. The only briefing that you did in this case was on the discrimination. Correct, and we're arguing... So you can leave the other two out. I am going to leave the other two out. This is just historical. Basically, this comes to be heard on an appeal from a motion for summary judgment that was granted to the Department of Veterans Affairs. However, there were significant material issues of fact precluding the entry of summary judgment in favor of the Department and against Mr. Cherif. The lower court reviewed the McDonnell-Douglas standard and found that Mr. Cherif did not meet two of those standards. I'd like to first talk about the failure to meet expectations. Here the evidence was conflicting. For instance, on the medication errors, one of the medications involved, anoxaparin, which I believe was an anticoagulant, was out of stock. Mr. Cherif testified in his depositions. He was not the inputting pharmacist, and the protocols required the inputting pharmacist to notify the physician writing the order. This is especially significant in light of two other issues that were raised by Mr. Cherif in his depositions. For one thing, he was disciplined for being overly confrontational when questioning a physician regarding an order. He actually suffered a suspension for that. So he's receiving conflicting signals from department management. And secondly, another employee, he testified, pharmacist Bono, testified that she should under-report or not report medication errors. Now, this is really important on the issue of whether summary judgment should have been granted, because regarding Bono's testimony, the ruling granting summary judgment evaluated Bono's testimony, weighed its credibility, said that she did not know what a medication error was, and drew inferences in light of the party motioning for summary judgment, not opposing summary judgment. The evidence was viewed in the light most favorable to the party, not to the party opposing summary judgment. Another issue, batching two different- Before we leave that issue, this other pharmacist by the name of Bono is the only comparator that you're offering here. Correct. And all you said in your appeal brief is that she was written up for failure to cooperate with coworkers and received a reprimand instead of- Correct. For a termination, so this issue about how to report medication errors wasn't briefed. It was part of the district court's decision, but you haven't rested your appellate arguments on that basis, so I'm not sure we can get to it. All right. I do discuss extensively in the brief the alleged medication errors, the issues of fact raised by Mr. Sharif, and the courts basically glossing over those and evaluating credibility and- Right, you do talk about all of that, but I'm talking about and focusing on the issue of whether there are any similarly situated pharmacists who received more lenient treatment for similar courses of conduct, and the only one that you identified as this Bono, and the only episode that you've identified is that she was written up for failure to cooperate and got a reprimand. Correct. That was it, and that is not even remotely close to the course of conduct that your client was terminated for, so it seems to me she's not a good comparator. Well, the government in its brief argued that Bono was not a good comparator because of Mr. Sharif's prior disciplinary conduct. However, all of that disciplinary conduct Mr. Sharif has put into issue in his depositions, and I've cited case law in the brief that someone can oppose summary judgment through their own depositions or their own affidavits, even if self-serving. Right, but you still need a similarly situated person, unless you've got direct evidence, because there's no direct evidence of discrimination here other than that one stray remark, which is not enough. You need some similarly situated pharmacist, and this is the only one you identified, and her misconduct was extremely modest, and your client's was ongoing and more substantial, even if there's a factual question about pretext. Right. Well, first of all, the trial lawyer developed the evidence regarding Bono, and we rest on what the record was made in the trial court, but we are arguing that Bono was a comparator and that the trial court evaluated evidence, indulged inferences in favor of the party, moving for summary judgment. I need you to tell me why Bono is a good comparator. She's also a pharmacist. She reported to the same person. Okay, but how is her conduct comparable to the course of conduct that your client was disciplined for? Okay, this is why it's a material issue of fact. There's a threshold question about whether she's an adequate comparator, if you want to get to a jury on this. Correct. Because this isn't just a fight about whether he was properly fired. This is a fight about invidious discrimination. Correct. But the whole argument as to why Bono is not a valid comparator is because she didn't have the same disciplinary record that Sharif did, and we're here on summary judgment, and Mr. Sharif is disputing that prior disciplinary record. Right, but the question is whether the employer honestly relied on the disciplinary record, and to demonstrate that it did not and that there was invidious discrimination going on, you've got to have someone who is reasonably close but was treated more leniently, and you still haven't told me why Bono was reasonably close. Well, I will concede that Bono was the only comparator evidence developed by the trial attorney for Mr. Sharif, but I cannot concede on appeal in oral argument that Bono was not a valid comparator. Well, she got a reprimand for what? For slow patient service, as I recall. And there were other circumstances that Mr. Sharif offered to explain that. Sometimes the hard drives crashed. There were many factors beyond his control. Labels weren't retrieved in time by other pharmacy staff. Again, this is summary judgment. Yes, I know. You've said that. I apologize. Are there any data on the ethnic composition of the pharmacist? It was not developed by the trial attorney. Okay. You want to save the rest of your time? I do. Thank you, Your Honor. Okay. Ms. Shahal? May it please the court, counsel. Unfortunately, in this case, Mr. Sharif was a weak link in the VA's patient care chain, and after three years of issuing progressively serious discipline, the VA couldn't afford to give Mr. Sharif any more time to correct scores. The judges, you honed in on one of the key issues in Mr. Sharif's inability to meet his burden of proof under the indirect standard of care, and that's his failure to identify a similarly situated comparator. Now, why isn't this Bona, whatever her name is, why isn't she similarly situated? Well, there's a few issues here, Your Honor. In terms of substantively, she was engaged in one incident that Mr. Sharif was also engaged in, and this was an incident where they were refusing to help a pharmacy technician by the name of Thelma Washington, who's identified in the briefs. Ms. Washington said that both Mr. Sharif and Ms. Bono refused to help her with assisting patients at the outpatient pharmacy care window, but there is a difference because when Mr. Azaki, who was the first-line supervisor, asked both Mr. Sharif and Ms. Bono what the issue was, Mr. Sharif refused to cooperate and answer the questions. He basically refused to discuss the incident until Mr. Azaki asked three different times, and then only under the threat of being written up for insubordination did he actually comply. And Ms. Bono was not accused of insubordination in that event. Also, she doesn't have the same disciplinary record. Yes, but your opponent's point about that is that it's a triable issue whether that disciplinary record is truthful or not, right? He argues that he's accused of all these violations, but they're not genuine, right? So how are we supposed to determine the correctness of his disciplinary record? I think there's a few responses to that. Under the similarly situated prong, there's procedural issues here in terms of why that shouldn't even be considered by this court. First of all, Ms. Bono was never, ever identified as comparator in the underlying case. It's kind of a moving target. In the complaint, Mr. Sharif identifies... That's not what I'm asking you about. I'm asking you about how much weight you can place on his disciplinary record if he has grounds for challenging its legitimacy, right? So he says things like, well, he's not authorized to disagree with... Well, I guess some... Your opponent mentioned some pharmacists, but also he said he couldn't override a doctor's decision as to a prescription or something like that. And so he's been blamed improperly. Well, doesn't the validity of that have to be determined? Your Honor, Mr. Sharif challenges and has excuses for three different allegations that he was charged with, but that's not the sum total of the reasons why he was actually terminated in this case. He was charged with a whole host of performance issues, cooperating with coworkers, failing to properly process delays, and he points to his reasons why three of them were not actually mistakes. And he acknowledges that he was the assigned pharmacist. He just disagrees with the reasoning that the VA proffered. But he has not presented any evidence in this case that the proffered reasons were not actually believed by the VA. And so to his pretext problem, he can't establish that. And under the similarly situated problem, I do think it's worth noting that in his complaint, he identifies just that white employees are treated generally better. In his discovery responses, we asked him to identify who the similarly situated comparators are. He points to four specific employees, none, and Ms. Wadah was not any of the four he named. We established that they actually were not similarly situated because they had different disciplinary records. Then he drops that in the motion for summary judgment. In the motion for summary judgment, he says, actually... Well, again, you're talking about different disciplinary records. If he was being discriminated against, of course he'd have a worse disciplinary record, right? But he would argue, or he is arguing, that he's being disciplined more because he's, you know, an Indian. Mr. Sharif was actually arguing that he disagreed with the reasoning proffered for three of the disciplinary actions. Based on his national origin, Your Honor, which is actually from the Ivory Coast, and he's African. And so that was his reasoning on those three. But the disciplinary record was not related to just those three instances. It's much broader than that. And he doesn't attack the rest of the disciplinary record that is actually used to justify his termination in this case. And Ms. Bono didn't come in as a possible comparator until very late in the game? Yes, Your Honor. And just to complete that, in the motion for summary judgment, actually what they say is they can't identify any similarly situated people. And that's because they suggest that these medical errors, such as the ones Mr. Sharif had made, had been underreported. And then they drop that argument on appeal. And for the first time say, actually, Ms. Bono is the comparator. And that appears nowhere in the complaint, in the discovery, in the motion for summary judgment in this case.  Correct, Your Honor. And in terms of pretext, he's established none. So he cannot establish the prima facie case on the similarly situated prom. And he's proffered no direct evidence of discrimination in this case. And we don't think the evidence, if he had, that there's any evidence in this case that the VA didn't honestly believe in the reasons it proffered for the termination, which in a three-year period were no less than eight disciplinary actions that encompassed no less than 15 different charges. So there are no further questions. Okay. Thank you, Ms. Shaw. Thank you. Mr. Carroll. Briefly, to respond to some of the arguments made by the government. First of all, regarding why Mr. Sharif was treated more harshly than Ms. Bono, regarding his supposed insolence, he explained that in his depositions. He was in the middle of filling a prescription for an emergency room patient. It's true that Mr. Izaki called him three times, but he explained this. It doesn't really justify the difference in discipline. We dispute that this issue was waived at trial about the comparatory evidence. In our reply brief, we cited from a portion of the motion for summary judgment where Bono Ms. Shahal said that you are just questioning a few of the disciplinary actions against him, not his entire disciplinary record. And if you subtract the few that you challenge, doesn't that leave him with a worse disciplinary record than Bono? Well, regarding his entire disciplinary course, he testified at depositions regarding why some of those disciplinary actions taken against him were defensible from his perspective. Regarding the other issues, the government's brief is very vague on that. The ruling granting summary judgment is extremely vague on that. The fact of the matter is that, and again, I'm sorry if I repeat myself, but there are issues of fact here where the evidence conflicts and where the judge has indulged the party opposing the motion, not the party, I'm sorry, indulged the party making the motion, not the party opposing the motion. What specific other discipline was he accused of? He was accused of not filling an anoxaparin medication. He was accused of batching two different prescriptions when, in fact, anyone could have batched those together. He was accused of insolence when Azaki summoned him to his office, but he explained that he was busy filling a prescription. Poor customer service, as he explained, and this is probably the catch-all of the other discipline alleged against him, that poor customer service was often due to matters beyond his control. Sometimes the printer wouldn't make out labels. Sometimes the computer crashed, and sometimes the staff didn't retrieve labels. He was blamed for prescription errors, and as we explained, when he challenged a physician, he was then suspended for being confrontational to that physician, sending him a very conflicting message. As the party making the motion for summary judgment, the government should be more specific about what the discipline was, especially in their argument on appeal. And I'm out of time. Thank you. Okay. Well, thank you very much, Mr. Carroll and Ms. Sharma.